Good morning, Your Honors. My name is Ifredo Irizarry. I represent the Castillo Condominium Association. I would like to ask, if possible, to reserve five minutes for rebuttal purposes, if it may be arranged. If corrected with this case, Your Honors, I will try to emphasize the facts of the case, which in my view would not allow the decision that Castillo has requested revision from this Court. Counsel, I advise you not to spend too much time on the facts because we've read the briefs very carefully and I think we're aware of the facts. You've got some legal hurdles here. Why don't we start with the question of what our standard of review is? Well, the standard of review, as I said, Your Honors, in this particular case, the case was originally decided by the administrative law judge by dismissing the complaint. Then, as a result of the special circumstances underlying the statute, the Secretary was able to reverse that. So we have two decisions of the Secretary before us. Those are the decisions we're reviewing. It's really one decision. First, the decision finding a violation and second, the decision awarding the remedy. So what's our standard of review of that decision? Well, the last decision, which was the decision resulting in an imposition of a $16,000 fine against the association and the awarding of $20,000 in damages in favor of the complainant should not stand unless it was clearly based on the facts and articulated in a way in which the decision by the administrative law judge concerning credibility... That's not a standard of review. We have standards that govern our review. One of the things that has bothered me about this case is that both sides have briefed it to us as if we are somehow fact finders, which we're not. Our work is governed by standards of review. Some issues were constrained to review de novo, others for abuse of discretion, others for clear error. There are a variety of standards of review, all right? And what neither side addresses in its briefs is what our standard of review is here. Now, in the typical administrative law case, we would review the Secretary's decision to see if it was supported by substantial evidence in the record, regardless of the fact of whether there was competing evidence, or whether it was arbitrary, capricious, or a manifest abuse of discretion. That's the kind of garden variety APA standard of review. Is that the standard of review that applies here? Well, it's a little stricter, maybe, from the brief. But when you say a little stricter, you mean a little stricter why? Because of the contrary ALJ decisions? Well, the thing is, the decision is... Answer my question. Do you say stricter because the Secretary's decision here reversed fact finding by the administrative law judge? I did follow you, sir. You said that the ordinary administrative law standard of review doesn't apply. It should be stricter in this case. And I asked you why it should be stricter. Does that relate to the fact that the administrative law judge made some fact findings that the Secretary ultimately reversed? Is that the reason you think the standard of review is stricter here? Those findings of the administrative law judge were based on credibility. Yes. I think that you have correctly interpreted my feeling concerning the standard. That is exactly what I think the standard is. Okay. Thank you. That's helpful. Can I ask you a factual question? Yes, sir. I don't know if it's in the record or not. Are there any other dogs in this condominium other than the one involved here? Not that I know of, Your Honor. I think there was an attempt from an apartment owner to get a dog in there and finally he had to remove it according to the regulations of the condominium because there was no reason for keeping the dog. And he had brought the dog in there after the regulations had been amended in 2004 to prohibit dogs. I'm not arguing with you, but I was under the impression that there had been other dogs, also a grandfather then, but maybe... No, no, no. What I'm saying is prior to 2004, there was a permission. Dogs and pets were allowed there under certain circumstances. After 2006, which is the time the amended regulation was published, no dogs or no pets were allowed there unless there were special kinds of dogs like blind people and special circumstances. But in this particular case, what happened is the complainant moved into the building in 1995. At that time, dogs were allowed. He never made any attempt to get a dog in there or to get a pet in there. In 2006, by a unanimous decision of all the title owners, the regulations were amended to prohibit the keeping pets in the condominium. After that, the complainant never asked permission to get a dog there until after December of 2009 when he was gifted as a Christmas present a pup that he called Bebo. After that, he did not ask the association for permission, but there were some complaints from other property owners concerning the presence of the dog in the elevators, etc. You don't have to continue with the facts. We're familiar with them. Don't waste your time on them. Unless you feel that you want to point something out. Well, the important thing is he never went through the process of requesting permission to keep a dog there and to show an exemption that would give him the right to go over or beyond the regulations. He was calling to get rid of the dog after some complaints were received. So he then decided that the issue was for DACO, Department of Consumer Affairs in Puerto Rico, to roll on and he went to DACO. He received from DACO a preliminary order or a stay order which was enforced until finally DACO upheld the regulation and then he did not seek judicial review. Eventually, he went to an office of HUD and filed a complaint requesting that he be allowed to keep the dog there. But his issue before HUD was an issue of reasonable accommodation. That's not something that DACO had a right to grant him. DACO's jurisdiction in this matter is to uphold or reject the validity of the condominium rules. They said it's a valid condominium rule. He then complains, as I understand it, to the FHA or to HUD saying that the condominium association has wrongly denied him a reasonable accommodation from that no pets rule and that's the finding that the secretary has made that you're up against today. So I think the notion that the DACO finding is somehow res judicata uh uh is is not correct and indeed if if DACO had the same jurisdiction as HUD in this matter DACO's uh statute would probably be preempted. Well first of all your honor the fact that the decision by DACO was limited in scope was because that's the way the claimant or the uh complainant presented it to DACO. He went there indicating that he had a right to keep the dog there uh aside from whatever the regulation read because he had moved in 1995 when uh dogs were allowed but then uh he did not show that at any time prior to uh the amendment of the uh the regulation he had kept a pet there so he brought after the amendment of the regulation and according to that to his own uh uh admission DACO decided that he had no right as a uh under the grandfather clause to keep the dog there. But his issue with his issue with HUD isn't that he has a right under the grandfather clause he's now saying that as a disabled person who is in need or as a person who was in need of a reasonable accommodation from that rule. As long as he had shown that he was a handicapped or disabled person under the purview of the law. Well you have you've got you've got rebuttal time reserved if you want to go back to that. Thank you. May it please the court Christopher Wang on behalf of the secretary of the department of housing and urban development. Mr. Wang let me start with you where I started with your brother standard of review. We believe it's for substantial evidence which is such relevant evidence that a reasonable mind would accept as adequate to support a conclusion. And and but if if the standard is substantial evidence simplicitor uh that means that the the ALJ's contrary jurisdiction is of no consequence contrary rulings are of no consequence to our standard of review. We believe that's the case your honor. Yeah but but and I grant you there's no case law that I could find in this circuit. But my understanding is that the uh law in at least three or four other circuits the only circuits that have confronted this is that where the ALJ makes factual findings which are then rejected by the secretary. There is a degree of heightened scrutiny of the secretary's decision under the substantial evidence statute. I believe that heightened scrutiny standard is is limited to disagreements regarding witness credibility. Well we've got we've got disagreements here regarding witness credibility. Your honor the ALJ described the disagreement as about credibility. We think a conceptually better way to look at it is that the secretary disagreed with certain facts in the record that the ALJ found relevant. The secretary found not to be relevant with regard to the legitimacy of Dr. Fernandez's testimony. Would it be appropriate for us though within the and derivative inferences made drawn by the ALJ is that is that the exercise we will be going through as we work through this case? Your honor I think that's a good way to distinguish between the two. When you have certain findings based on observations of the witness in a courtroom say the judge says that the witness he looked his eyes were shifty or he looked around when he was testifying. That's that's testimony that you might want to give some credence to uh if you're a body such as the secretary. So does the ALJ have to put those observations on on the record or describe them in in the report? I don't know if he has to put them in the report. I think in this particular case there's no doubt that these uh the factors that the ALJ found relevant such as the absence of copious note in Dr. Fernandez's uh records uh his friendship with Mr. Jimenez and the fact that Mr. Jimenez did not pay him for medical services. These are all facts that are not related to the personal observation of the witnesses and thus the secretary would be in is in no less of a position to analyze those facts as related to the Dr. Fernandez's testimony. Didn't Dr. Fernandez testify though? He did testify your honor. So how how do we know how do we distinguish between what the ALJ thought might be corroborative uh evidence or consistent written testimony written evidence consistent with how the doctor testified and if he doesn't believe the doctor on the stand and says the rest of this is consistent with that. So what do we do with that? What do we do with that? Your honor I think the best thing you can do is you can look at what the ALJ actually said in his initial decision. He said that he was concerned about the failure the absence of copious notes. He was concerned about Dr. Fernandez's friendship with Mr. Jimenez and about the fact that Mr. Jimenez uh did not pay Dr. Fernandez for his services. That's all that's the best you can you I don't think you can read into what the ALJ if the ALJ didn't put in his initial decision I don't think you can read into what he might have thought about based on those very facts the ALJ made a judgment to discount the doctor's testimony and he had heard and seen the doctor the doctor had an opportunity to convince him that those facts shouldn't have been probative all right the secretary then looks at a paper transcript a written transcript of Dr. Fernandez's testimony looks at the same facts and says well the ALJ uh put too much weight on those facts in declining to accept Dr. Fernandez's testimony and then explains why the secretary thinks that so isn't that precisely the sort of finding under the uh appropriate standard of review that deserves heightened scrutiny or to use the words of the of the eighth circuit that has to be looked at more critically no your honor because those findings were just contrary to law it's uh contrary to law there's a there's a there's a finding that says that says the ALJ says I think it's relevant to Dr. Fernandez's credibility that he and Jimenez are friends I think it's relevant to his credibility that he didn't take copious notes etc etc those findings are contrary to law those findings are absolutely true in the sense that the two were friends that doctor didn't take copious notes etc so there's an evaluative judgment that is then made by the secretary the secretary said I've read Dr. Fernandez's testimony he's he's consulted with and examined Jimenez over over many years he's a highly qualified psychiatrist and I think that ALJ was wrong uh to give negative weight to that list of other factors because I find Dr. Jimenez's testimony persuasive all right if that's that's a any way you dress it up that those are both credibility determinations your honor we would we would say that the ALJ's finding of particular relevance the ability to draw a negative inference from those facts is contrary to what the HUD has said in his joint statement which is that a a doctor is in a position who's in a party who's in a position to provide reliable evidence can't can't to verify disability can't do so that certainly implies that a friend someone who who knows the complainant who knows that about the complainant's disability can provide verification of a disability also the the joint statement says that usually medical records and detailed information about a a disability is not required to establish the disability itself so by putting such weight on those particular factors the the ALJ in fact uh decided contrary uh to the joint statement but aside from what the ALJ thought about Dr. Fernandez's testimony what's really important in this case that he completely disregarded the testimony of Mr. Jimenez and Dr. Onda his primary care physician who both testified in fairly extensive detail as to Mr. Jimenez's long history of anxiety and depression and we would submit that even if you believe the ALJ's uh feelings about Dr. Fernandez's testimony you take the testimony of Mr. Jimenez himself and Dr. Onda and those together uh established um this Mr. Jimenez's disability under the substantial evidence standard you know I think we're kind of talking at cross purposes right I'm not suggesting that that because a more nuanced standard of review applies that the ALJ's findings had to be accepted by the secretary I'm just suggesting that the secretary's reasons for rejecting those findings have to be more persuasive than would ordinarily be the case under the substantial evidence standard it may very well be that when we apply that test we will find the secretary's reasoning very persuasive but but for the sake of orderliness in the law as well as getting the correct decision in this case we're struggling with the notion of getting the standard right that's all I understand that your honor and my my our view is that because the the secretary's reversal of the ALJ's findings with regard to Dr. Fernandez were not based on his personal observations but rather on facts in the record that the secretary could have reviewed on uh just reading the transcript that they should not be subject to heightened scrutiny but even if you disagree with that argument and you believe that heightened scrutiny should apply to the ALJ's findings on Dr. Fernandez's testimony the secretary's finding of disability still should be upheld under a heightened scrutiny standard basically for one of the reasons I've said before you've got three individuals Dr. Fernandez, Mr. Jimenez, and Dr. Unup basically all testifying to the same thing that Mr. Jimenez has long suffered from anxiety and depression the testimony of one individual corroborated and was corroborated by the testimony of the two others so I don't think this is a close issue on the issue of disability I don't think it's a close issue at all um with regard to uh the whether uh Mr. Jimenez put the um the board on notice of his disability and whether he made a request for reasonable accommodation opposing counsel puts much stock in the fact that he he didn't make a request uh before he brought the dog into the with the disability doesn't have to make a request in a certain manner or at a certain time for the request to be legitimate all the request has to do is to put the housing provider on notice that the individual has a disability and requests a reasonable accommodation to alleviate that disability and there's no doubt that that occurred in this case the April 2010 letter uh from Mr. Jimenez to the board of trustees that was sent to this dog under the federal statutes and attached an email from Dr. Fernandez stating that Mr. Jimenez was disabled under the Fair Housing Act and required this dog as an emotional support dog to relieve his stress and anxiety there's no doubt that that the letter and the attached email put the board on notice of Mr. Jimenez's disability and requested a reasonable accommodation and when the board received that what did it do did it request more information from Mr. Jimenez and Mr. Dr. Fernandez no what it did was it basically just rejected the uh Mr. Jimenez's request out of hand without requesting any additional information and what I mean what the uh the board did was basically shirk its responsibility under the required interactive process uh uh it's required in in reasonable accommodation requests in which a housing provider basically if they receive a request from an individual with a disability and they're not sure if the individual is truly disabled they can't just reject the request out of hand what they need to do is they need to go back to the individual and say look we're not really sure that you have a disability please provide us with more information so we can confirm your disability and your need for this accommodation and the board absolutely failed in its duty to uh carry that burden and that's actually that's really the crux of this case is that they failed to do that all right so let me let me switch your emphasis to something you haven't covered the ALJ also set a an amount of damages as a remedy and a the amount of a penalty a monetary penalty and the secretary substantially increased both of those amounts again let me start with what's our standard of review of those determinations well we are reviewing the secretary's determination as a final agency order and you'd review the the award of of damages in the civil penalty for abuse of discretion you'd review the underlying factual findings of the secretary for substantial evidence but the point i'm getting at is does the ALJ's opinion as to the appropriate amount of damages or the appropriate amount of the penalty uh is that the sort of thing that has to be looked at more critically or with heightened scrutiny no no it's not it's it's because there's no uh as far as as far as i recall there's nothing in in those decisions that was based on a credibility of the witnesses yeah right makes sense and how do you justify the twenty thousand dollars in damages here we think that the twenty thousand dollars in damages award is is in quite reasonably in line with previous HUD awards uh and that have been upheld i refer this uh court to various cases that have been addressed in the secretary's order uh on damages i i think river bays was another uh emotional support dog case in which the board like the board in this case absolutely refused to engage any sort of interactive process and there's also the astralis case uh which came to this circuit i believe authored by judge celia uh in which uh the board uh basically subjected the complainants to embarrassment and humiliation for requesting handicapped parking spots closest to their unit i would add that in both of those cases the complainants did not were not basically forced to leave the unit in which they were living in this in this particular case um mr jimenez was forced to leave uh the condo unit for 15 years and i was close to his boyhood home and that is uh i think that i mean that's something that weighed very heavily on the secretary's mind rightfully as to why the the emotional damages award should be twenty thousand dollars in addition to the the anxiety and stress that mr jimenez was experiencing when he did not know whether he would be able to stay in his uh condominium unit and keep his dog there as well what is the civil penalty based on the civil penalty is based on the uh a lot of it is the egregious um uh failure of the board to uh know anybody basically they're they're claimed ignorance of the fair housing act i i believe that the the alj found that to be a mitigating factor and the secretary rightfully said no that's an aggravating factor when you basically you can't claim ignorance of the law as an excuse uh that you didn't follow it uh there i believe there's also um they didn't introduce any evidence of the financial condition uh whether their ability to pay and uh the therefore the alj wrong wrongfully took that i see that my time's up if the panel has any additional questions i thank you thank you very much uh petitioner uh two things your honors first the uh uh implication of uh my colleague's argument is in concerning the uh decision by the a the administrative law judge not to uh believe or not to consider heavily the testimony of dr fernandez uh was not merely a decision not to believe him based on whatever notes he did not take or something he failed to do the the same he our colleague my colleague has failed to mention that there was an opposite expert witness who testified extensively and made a very full and complete report concerning his uh uh examination of uh of the play of the complainant and there were two different expert reports before the uh administrative law judge he decided that the one he would uh give more weight to was the one that was uh presented by the uh by the respondents in this castillo second uh the the fact that there was even assuming there was a need to uh to go further with the complainant and to try to get from him some information to try to accommodate him uh fails to recognize that he was given the opportunity to meet with the conciliation and he decided to go directly to the department of uh consumer affairs in puerto rico and he rejected the invitation to go before the conciliation committee lastly there is no way in this case in my view that you can find damages uh even assuming there was something wrong by the by the association the complainant in this case had the dog with him from the time he brought him into the condominium until he moved to isla verde he sold his condominium and moved to isla verde and he had the dog there all the time he did not pay any attention to whatever the uh the association did with respect to fines eventually the fines were removed he never paid one cent of a fine he had the dog with him all the time except when he traveled out of puerto rico extensively and left the dog with his friends so i cannot see how can you find damages here i think that there's some kind of a uh uh desire to make some kind of an example of this case by the secretary uh as a matter of fact he has published in the press that this case uh was decided in the manner that he decided because there is no way in this case to find the castillo condominium with sixteen thousand dollars of a fine which is the uh the largest amount of a fine that could be imposed under the law and the condominium had never been charged with any kind of misconduct or any kind of discrimination or any kind of violation to anything that had to do with her and i cannot find from day one to the last time he was at the condominium anything that you could use to be to base a twenty thousand decision concerning damages this person never never paid any fines he never never suffered any damages he he spent his time in the condominium he went to daco the daco decision took one year or a little over a year and after the decision came from daco he decided to sell he had been prior to the decision from daco he had been preparing a condominium in isla verde to move there then he saw he purchased that condominium uh i uh with some kind of an incentive grant by the government and also when he sold his own condominium he make it a hundred and seventeen thousand dollars profit based on what he had paid for the condominium he never he never uh could show any economic damage he had to uh he removed that part of his claim when we asked for his uh income tax returns he had that he had an economic loss in the transaction we asked for the uh we showed we showed that in the brief we asked for his uh income tax returns and he never produced that he withdrew anything having to do with economics from the claim of damages he just left the so-called emotional distress damages thank you thank you thank you both